No. 22-50141

# In the United States Court of Appeals for the Fifth Circuit

---

EMILIO LIRA

*Plaintiff-Appellant,*

v.

EDWARD JONES INVESTMENTS

ALSO KNOW AS EDWARD D. JONES & COMPANY, L.P.

*Defendant-Appellee*

---

**On Appeal from the United States District Court
for Western District of Texas**

**No. 5:20-cv-7**

**Hon. Jason Pulliam**

---

**BRIEF OF APPELLANT**

**Emilio Lira**

---

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
San Antonio, Texas 78201
210-225-0909
*hgarlaw@outlook.com*

*Attorney for Appellant Emilio Lira*

## CERTIFICATE OF INTERESTED PERSONS

No. 22-50141

*Lira v. Edward Jones*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Emilio Lira
Appellant

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
San Antonio, Texas 78201
Attorney for Appellant

Edward Jones Investments
a/k/a Edward D. Jones & Co., L.P.
Appellee

James F. Barrett
Michelle Nasser
DOWD BENNETT, LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314-889-7300 Telephone
314-863-2111 Facsimile

Shannon B. Schmoyer
SCHMOYER REINHARD, LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
210-447-8033 Telephone

i

210-447-8036 Facsimile
Attorneys for Appellee

By: _____
  Humberto G. Garcia

  Attorney for Appellant Emilio Lira

## STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES .................................................................................. v

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................... 1

STATEMENT OF THE CASE ............................................................................... 1

    A. BACKGROUND……………………………………………………………2

SUMMARY OF THE ARGUMENT ..................................................................... 6

ARGUMENT........................................................................................................... 7

    I.     **THE COURT ERRED IN GRANTING APPELLEE'S MOTION
      FOR SUMMARY JUDGMENT**……………………………………………7

      **A. STANDARD OF REVIEW**……………………………………………7

      **B. THE DISTRICT COURT ERRED IN FINDING
      THAT PLAINTIFF DID NOT ESTABLISH A PRIMA
      FACIE CASE OF RETALIATION**…………………………………...…9

      **C. THE DISTRICT COURT ERRED WHEN IT
      FOUND THAT APPELLEE'S REASONS FOR
      TERMINATING APPELLANT WERE NONRETALIATORY
      AND NOT PRETEXTUAL**…………………………………………13

CONCLUSION.................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................... 21

CERTIFICATE OF COMPLIANCE…………………...……………………22

**TABLE OF AUTHORITIES**

## Cases

*Adams v. Alcolac, Inc.,* 974 F. 3d 540, 543 (5th Cir. 2020) (per curiam)……….8, 17

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S. Ct. 2505,

91 L. Ed. 2d 202 (1986)…………………………………………….………7

*Byers v. Dallas Morning News, Inc.* 209 F. 3d 419, 425, 427 (5th Cir. 2000)………8

*Feist v. Louisiana Department of Justice, Office of the Attorney General,*

730 F. 3d 450, 454 (5th Cir. 2013)…………………………………………..8

*Garcia v. Prof'l Cont. Servs., Inc.,* 938 F. 3d 236, 242 (5th Cir. 2019)……………..8

*Hare v. Bd. Of Supervisors of La. State Univ. Agric. & Mech. Coll.,*

719 F. 3d 356, 363 (5th Cir. 2013)…………………………………………..9

*Kevin M. Ehringer Enters. v. McData Servs. Corp.,* 646 F. 3d 321, 325

(5th Cir. 2011)……………………………………………………...8, 17

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817,

36 L.Ed. 2d 668 (1973)……………………………………………….…8

*Patrick v. Ridge,* 394 F. 3d 311, 315 (5th Cir. 2004)………………………………9

*Schroeder v. Greater New Orleans Fed. Credit Union,* 664 F. 3d 1016, 1024

(5th Cir. 2011)……………………………………………………....8

*Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 44 (5thCir. 1992)……………………10

*West v. City of Houston,* 960 F 3d 736, 740 (5th Cir. 2020) (per curiam)…………7

**Statutes**

28 U.S.C. §1291…………………………………………………………1

28 U.S.C. §1333………………………………………………………....1

Title VII Civil Rights Act, 42 U.S.C. §2000e-3(a) …………………..…1

## JURISDICTIONAL STATEMENT

Jurisdiction was conferred in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. §1331 as it is an action arising out of 42 USC 2000e-3(a), and Title VII of the Civil Rights Act of 1964, as amended.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 as it is an appeal from a final order of a United States District Court. The judgment in the District Court was entered on February 2, 2022. The judgment entered by the District Court disposed of all of Appellant's claims. Appellant filed his Notice of Appeal on March 1, 2022.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in granting Appellee's Motion for Summary Judgment.

## STATEMENT OF THE CASE

This is an appeal of the granting of summary judgment by the trial court on behalf of Appellee. Appellant filed a retaliation case under Title VII of the Civil Rights Act. Appellant filed a motion for summary judgment contending Appellant failed to establish a prima facie case of retaliation because there is no causal connection between a protected activity and termination of his employment and it terminated Appellant's employment for legitimate, nonretaliatory, and non-pretextual reasons. Appellant filed his response contending that there is evidence of a causal connection between his protected activity and his termination such that he

established a prima facie case of retaliation. Appellant further contended that the reasons articulated by Appellee for his termination were not legitimate, were retaliatory and pretextual.

## A.    Background

Appellant was employed by Appellee as a Financial Advisor beginning in 2005. ROA. 1053. In November of 2014, Lira made an internal complaint of discrimination alleging he was not considered for assignment to the Edward Jones' office in Uvalde, Texas as Appellee did not have a system whereby openings in their offices were advertised or announced and no opportunity for submitting an application for consideration of assignment to such offices was afforded to Mexican American or Latino financial advisors. As a result, since such vacancies were given to financial advisors' family and friends, who were white thus shutting out Mexican American or Latino financial advisors. ROA. 1055. Appellant alleged discrimination on the basis of race and ethnic origin. *Id.* When his complaint was not satisfactorily addressed, he file a complaint with the United States Equal Employment Commission ("EEOC") on February 8, 2016. ROA. 12. On October 14, 2016, Appellant filed a lawsuit against Appellee in which he brought claims of discrimination based on race and ethnic origin. *Id.*

After pending for over two years, the trial court entered and Order granting Appellees' motion for summary judgment over Appellant's opposition on March 12, 2019. ROA. 12. Judgment for costs was entered against Appellant. ROA. 12.

Even though his claims of discrimination were pending in the lawsuit, Appellant continued to complain to Appellee about its policies relating to the filling of vacant offices. ROA. 1055.

On April 29, Appellant received an email from Appellee requesting that Appellant report to Appellee the judgment it had obtained against Appellant so that it in turn could report it to the Financial Industry Regulatory Authority ("FINRA") ROA. 1435. Appellee did not respond to this email. On May 7, 2019, a second email was sent to Appellant by Appellee questioning why Appellant had not responded. ROA. 833. On May 8, 2019, Appellant responded with an email in which he stated as follows:

*"Leigh,*

*I am upset and in disbelief that the judgment even occurred. Because I am human, [it] has taken me a while to come to terms with it. I will be more than happy to explain myself to FINRA for my lack of timely reporting. Maybe FINRA can chime in on the firm's discriminatory and fraudulent behavior after my explanation.*

*I don't feel safe in this firm when we behave like a white supremacist or a colluder of white supremacist would as it relates to our on-boarding of Financial*

*Advisors into these massive offices in an unsafe, hidden and illegally discriminatory*

*manor [sic]. This behavior delegitimizes us as an organization in many ways.*

*I don't feel safe is the short answer and I know [too]much about how we*

*operate. I had a chance to look at all the evidence as my own Pro Se Attorney. [It is*

*too] bad for me and the firm, I could not get my day in court with a jury of my peers.*

*Forgive me if I seem rude. I am not upset with you. My anger is really with*

*the firm policy I call the Validation of Illegal Discrimination (VOID) Rule. This*

*policy is a real sticker if you are Hispanic with a Hispanic surname or born black.*

*I unfortunately do not know how to collude or cowar [sic] down from it.*

*I can extrapolate on this if you like. Give me a call."*

ROA. 831

This email was considered "unprofessional conduct". ROA. 1236.

On May 13, 2019, Appellant was terminated by Appellee for "unprofessional

conduct". ROA. 12.

Appellant filed a complaint with EEOC on September 26, 2019 alleging

retaliation for having launched claims of discrimination on the basis of race and

ethnic origin. ROA. 67. On January 6, 2020, Appellant file suit in this cause alleging

retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e3(a). ROA.

10.

On March 10, 2021, Appellee filed its motion for summary judgment claiming Appellant failed to establish a prima facie case of retaliation because there was no causal connection between a protected activity and termination of his employment. Appellee further contended that it terminated Appellant's employment for legitimate, nonretaliatory, and no-pretextual reasons. ROA. 181.

On March 24, 2021, Appellant file his response contending he had established a prima facie case of retaliation as there was a causal connection between his protected activity and his termination. Additionally, Appellant contended the reasons articulated by Appellee for his termination were not legitimate, retaliatory and pre-textual. ROA. 528-547.

On February 2, 2022, the Court issued its Memorandum Opinion and Order in which it granted Appellee's Motion for Summary Judgment and dismissed Appellant's cause. ROA. 605-621

On March 1, 2022 Appellant filed his Notice of Appeal thus perfecting this appeal. ROA. 635.

## SUMMARY OF THE ARGUMENT

The trial court erred when it granted Appellee's motion for summary judgment as there was more than a scintilla of evidence to establish a prima facie case of retaliation when Appellee terminated Appellant's employment thus creating a genuine dispute as to a material fact. Additionally, sufficient evidence was presented to raise a genuine dispute that the reasons articulated by Appellee for terminating Appellant's employment were illegitimate, retaliatory and pretextual. Appellee was not entitled to judgment as a matter of law.

# ARGUMENT

## II.    THE COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT

The trial court erred in granting Appellee's Motion for Summary Judgment because there was a genuine dispute of fact as to whether Appellant established a prima facie case of retaliation. Appellant presented more than a scintilla of evidence that there was a causal connection between his protected activity and his termination. Additionally, Appellant presented more than a scintilla of evidence to raise a genuine dispute of fact as to whether the reasons articulated by Appellee for the termination of Appellant's employment were retaliatory, illegitimate, and pre-textual.

### A. Standard of Review

A review of the granting of summary judgment is de novo. *West v. City of Houston,* 960 F 3d 736, 740 (5th Cir. 2020) (per curiam). Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* The review of the evidence must be done in the light most favorable to the nonmovant and draw all reasonable inferences in that party's

favor. *Adams v. Alcolac, Inc.,* 974 F. 3d 540, 543 (5th Cir. 2020) (per curiam). Furthermore, the District Court may not make credibility determinations or weigh the evidence. *Kevin M. Ehringer Enters. v. McData Servs. Corp.,* 646 F. 3d 321, 325 (5th Cir. 2011).

In cases such as this, the District Court is to apply the *McDonnell Douglas* framework. *Byers v. Dallas Morning News, Inc.* 209 F. 3d 419, 425, 427 (5th Cir. 2000) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973). Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between a protected activity and the adverse employment action. At the prima facie stage, a plaintiff can meet his burden by simply showing close enough timing between his protected activity and his adverse employment action. *Garcia v. Prof'l Cont. Servs., Inc.,* 938 F. 3d 236, 242 (5th Cir. 2019). However, this is not the only way to establish the causal connection as the plaintiff can present other evidence of retaliation. *Feist v. Louisiana Department of Justice, Office of the Attorney General,* 730 F. 3d 450, 454 (5th Cir. 2013). Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. *Schroeder v. Greater New Orleans Fed. Credit Union,* 664 F. 3d 1016, 1024 (5th Cir. 2011).

If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Patrick v. Ridge,* 394 F. 3d 311, 315 (5th Cir. 2004). If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. *Id.* A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated his employer's decision, such as through evidence of disparate treatment, or that his employer's explanation is unworthy of credence. *Hare v. Bd. Of Supervisors of La. State Univ. Agric. & Mech. Coll.,* 719 F. 3d 356, 363 (5th Cir. 2013).

## B. The Court Erred in Finding That Plaintiff Did Not Establish a Prima Facie Case of Retaliation

In its Memorandum Opinion and Order the District Court found that Appellant satisfied the first two prongs of a prima facie case of retaliation, i.e., he engaged in protected activities and suffered an adverse employment action, but he could not satisfy the third prong because it found that Appellant could not make a causal connection with a protected activity and his termination by Appellee. ROA. 617-618. In its analysis, the District Court only considered one protected activity as relevant. The District Court isolated the Appellant's Response in Opposition to Defendant's Motion for Summary Judgment filed in the 2016 case on January 9, 2019 as the protected activity that could be considerate relevant for purposes of

determining a causal connection with the termination because the other activities were "too far removed from his May 13, 2019 termination to establish a prima facie case of retaliation." ROA. 615. The District Court further determined it could not consider any activities other than the filing of the Response because Appellant had not alleged a "continuing violations" theory. ROA. 615-616. What the District Court failed to consider is that the lapse of time did not automatically absolve Appellee of its responsibility for retaliating against Appellant when we look at the "big picture". *Shirley v. Chrysler First, Inc.,* 970 F. 2d 39 (5th Cir. 1992). It is the fact that Appellant sued Appellee for unlawful discrimination which is at the heart of Appellee's decision to terminate him, and the lawsuit did not end until March 12, 2019. Granted this raises the question of why did Appellee not terminate Appellant when he first filed the suit or at any time it was pending and before March 12, 2019. The simple answer is that Appellee, being a sophisticated employer would not risk a retaliation claim unless it could articulate legitimate reasons, such as poor performance or serious misconduct on the part of Appellant. A jury considering this cause could have seen and decided that, absent such a legitimate reason, an employer such as Appellee would not risk another lawsuit if it did not wait until the employment discrimination lawsuit was terminated on March 12, 2019. This would be especially true given that Appellant continued to voice his complaints of discrimination relating to the onboarding of financial advisors while the lawsuit was pending. ROA. 1211,

10

1215 and ROA. 1423, 1426, 1428, 1432. A jury could find that in light of his continued complaints, Appellee would have every reason to want to terminate him for the slightest of reasons. This, the District Court failed to consider in deciding to isolate just the filing of the response in opposition to the motion for summary judgment in the underlying case as the only protected activity to consider. Essentially, the District Court failed to consider other evidence of retaliation in deciding whether there was a causal connection between Appellant's lawsuit and his termination. The references to the emails sent by Appellant to Appellee after March 12, 2019 were not made for the purposes of adding more protected activities but to shine a light on the big picture, that is, that Appellant was a thorn on the side of Appellee because of his continued complaints and the only way to end it was to terminate him, albeit on the basis of dubious reasons.

With respect to the complaints of discrimination and the lawsuit pending, Steve Rarick, the person making the decision to terminate Appellee, was aware of the lawsuit and the complaints raised by Appellant. ROA. 1305-1306. He was also aware of the outcome of the lawsuit and that it was dismissed. ROA. 1307.

Notwithstanding the proffered reasons for terminating Appellant, there was no evidence presented by Appellee that Appellant was performing poorly in his job. On the contrary, the only evidence related to Appellant's performance came from Appellant, which was not controverted. ROA. 1060. Other than the termination,

Appellant had never had any disciplinary proceedings taken against him by Appellee. ROA. 1449.

In addition to the above, Appellant presented evidence of the animosity held by Appellee against him. This included testimony via affidavit and emails authored by Appellee personnel. ROA. 1053-1060 and ROA. 1269. The animosity began when Appellant first began complaining about Appellee's discriminatory practices when assigning financial advisors to the more lucrative offices. *Id.* Of particular interest is that on June 24, 2020, Appellee announced that it had unveiled a plan for combating racism and increasing opportunities for employees of color. ROA. 1069, 1070. This begs the question, why would Appellee announce such a plan if racism did not exist within the company.

Other evidence of retaliation has to be the Appellee's reaction to the email wherein the phrase "white supremacists" was used. In his deposition, Steve Rarick admitted that a white supremacist is a person who believes that the white race is inherently superior to nonwhites. ROA. 1106. Appellee called the use of this phrase "unprofessional conduct", but can it really be considered unprofessional conduct if the reference fits? If Appellee recognized and tacitly admitted that racism existed within its company, then have they not been acting like white supremacists before such recognition? Appellant's complaint all along was that white financial advisors were getting all the plum offices, that is, the ones with the higher assets under

management, at the exclusion of nonwhite financial advisors, then arguably, Appellee was behaving as if it believed white financial advisors were superior to the nonwhite financial advisors. This has to be considered evidence that the phrase, while unpleasant to the ears of Appellee, was accurate. It then follows that Appellee's reaction in firing Appellant was simply an attempt by Appellee to deflect this fact.

Considering the evidence of Appellant's lawsuit which raised serious claims of unlawful employment discrimination, his continued complaints even after his lawsuit was dismissed, his termination two months following the dismissal, along with the absence of evidence of poor work performance on Appellant's part, and considering the evidence of Appellee's animosity toward him, as well as Appellee's reaction to the email as described above, Appellant met his burden of showing a causal connection between his complaints of discrimination and his termination. The District Court erred in finding to the contrary.

### C. The District Court Erred When it found that Appellee's Reasons for Terminating Appellant Were Nonretaliatory and Not Pretextual

Following the dismissal of Appellant's lawsuit on March 12, 2019, Appellee applied for and obtained a judgment for costs against Appellant. ROA. 1062. Appellee then turned around and requested that Appellant report to Appellee that

Appellee had obtained a judgment against Appellant so that it could then report to the Financial Industry Regulatory Authority ("FINRA") the fact of the judgment. ROA. 1435. According to FINRA rules, members (such as Appellee) are required report certain events involving their financial advisors, including judgments and the like. ROA. 1471, 1474. Even though Appellee was aware of the judgment because it was the one who had obtained it against Appellant, Appellee began sending a series of emails to Appellant requesting that he report the judgment. ROA. 831, 832, 833. It was when Appellant replied to the emails on May 8, 2019 that Appellee made the decision to terminate him. ROA. 831. Appellee terminated Appellant on May 13, 2019. ROA. 1077-1078.

It is the articulated and proffered reasons for the termination which the District Court had to examine in order to determine if they are legitimate and nonretaliatory. However, Appellee was not consistent in articulating its reasons. For instance, right after it made its decision to terminate Appellant and communicated the decision to him, Appellee filed with FINRA a U-5 Form on May 24, 2019 noting that Appellant had been terminated for "Failure to provide timely response to compliance inquiries; unprofessional conduct, not securities or client related". ROA. 1077-1078. Appellee did not provide Appellant with any other written explanation for his termination. ROA. 1204.

After Appellant had applied for unemployment benefits due to the termination, Appellee submitted a written letter to the Texas Workforce Commission on July 31, 2019 citing, "among the reasons for the termination was his failure to report a money judgment…". ROA. 1064-1067. However, nowhere in this letter did Appellee cite as a reason for the termination that Appellee had engaged in "unprofessional conduct". *Id.* Once this lawsuit was filed and Appellee was asked in Interrogatories for the reasons for the termination, it replied, "Edward Jones states that the reasons for its decision to terminate Plaintiff's employment were that Plaintiff violated the Firm's mandatory reporting policy for the second time, then failed to provide timely responses to compliance inquiries related to that violation, then when he did provide his untimely response, he engaged in unprofessional conduct." ROA. 1236. When asked in the Interrogatories to specify the "unprofessional conduct", Appellee indicated that when Plaintiff responded to the compliance inquiries, he used the phrase, "white supremacists" to refer to Edward Jones' leadership. ROA. 1238. The email cited by Appellee as containing the phrase, "white supremacists" is the email of May 8, 2019. ROA. 1231. In this email, Appellant complains yet again that Appellee is discriminating against nonwhite financial advisors in its system of onboarding the financial advisors. *Id.* In other words, Appellee was terminated because he voiced complaints of discrimination.

Despite the contentions made in its July 31, 2019 letter cited above, Appellee stated in its Motion for Summary Judgment that "Plaintiff's employment was not terminated for his failure to report a reportable event." ROA. 173. It was that "Plaintiff 'crossed the line' by calling the Firm and its leaders white supremacists or colluders of white supremacists in the context of responding to a routine inquiry of a paralegal charged with assisting Plaintiff in complying with FINRA requirements. *Id.* (To be accurate, what Appellant said in his email was, *"I don't feel safe in this firm when we behave like a white supremacist or a colluder of white supremacist would as it relates to our on-boarding of Financial Advisors into these massive offices in an unsafe, hidden and illegally discriminatory manor [sic]. This behavior delegitimizes us as an organization in many ways.")* ROA. 1231.

However, Steve Rarick, Appellee's employee, testified in his deposition that Appellant's failure to report the judgment for costs which Appellee had secured against him was "context" for his termination. ROA. 1347.

Despite the inconsistent and contradictory explanations given by Appellee to justify the termination, the District Court concluded that "There is also no evidence that Edward Jones took any adverse action against Lira for his failure to report the judgment." ROA. 617. However, the Court then concluded that "the undisputed summary judgment evidence shows that Lira failed to timely respond to a compliance inquiry and he responded to Drnec's email with unprofessional

language. Edward Jones terminate Lira for those reasons." ROA. 621. What the Court did is exactly what 5th Circuit Court said in *Kevin M. Ehringer Enters. v. McData Servs. Corp.,* 646 F. 3d 321, 325 (5th Cir. 2011) could not be done. That is, the District Court weighed the evidence and decided every inference in favor of Appellee and not Appellant, contrary to the 5th Circuit Court's holding in *Adams v. Alcolac, Inc.,* 974 F. 3d 540, 543 (5th Cir. 2020) (per curiam). What Appellee was trying to do by way of its "compliance inquiries" was to get Appellant to report the judgment it already knew about because it secured it. By not responding to the inquiries "timely", that is, by not reporting the judgment and replying to the emails, Appellee concluded, as did the District Court, Appellant failed to "timely respond to a compliance inquiry". Saying that he failed to "timely respond to a compliance inquiry" is not the same as failing to report the judgment is a distinction without a difference because Steve Rarick testified that if Appellant had reported the judgment and if he had responded in a timely manner and not responded "inappropriately" he would not have been terminated. ROA. 1175. What he is saying is exactly that the failure to report the judgment was a reason for his termination.

To further undermine Appellee's proffered reason regarding the failure to report the judgment, Plaintiff presented to the District Court information produced by Appellee during discovery which set out the names of all financial advisors who had failed to report a reportable event under FINRA Rules and the disciplinary action

taken against them for such failure. ROA. 1462-1469. Although some were terminated because of the reportable event, no financial advisor was terminated for failing to report the reportable event. ROA. 1497-1498. This evidence was not considered by the District Court.

The District Court further failed to consider several key facts with respect to Appellee's contention that the email containing the words, "white supremacist" constituted "unprofessional conduct". First of all, Appellee admitted that the term "unprofessional conduct" is not defined in any of its policies. ROA. 1409, 1450. Additionally, prior to Appellant's termination, no financial advisor was ever terminated for engaging in unprofessional conduct. ROA. 1452. Then Steve Rarick testified that calling the email "unprofessional conduct" was a subjective determination on his part. ROA. 1109, 1116. He agreed that the phrase "white supremacist" meant a person who believes that the white race is inherently superior to nonwhites. ROA. 1106. He further agreed that he made the decision to terminate Appellant as soon as he read the email of May 8, 2019 and before inquiring of Appellant his reasons for using the phrase. ROA. 1113. Without giving any explanation, the District Court concluded that using the phrase "white supremacist" was "unprofessional language" and thus Appellee was justified on relying on this to terminate Appellant. The District Court never considered whether the use of the phrase, "white supremacists", was appropriate in light of the evidence of racism

existing within the company as mentioned above. This also shows that the Court was weighing the evidence and giving credence to Appellee's subjective contention without considering how the jury would see the use of the terms and whether they would believe it constituted "unprofessional conduct", especially in light of Appellee's public acknowledgment that racism existed within its organization.

Given the jumbling of Appellee's proffered reasons for the termination, a jury could have concluded that such reasons were not legitimate or nonretaliatory but mere pretexts for the real reason, that being that Appellant had hurled against Appellee, serious allegations of unlawful discrimination and was obviously not going to stop until and unless Appellee got rid of him. By stepping into the jury box, the District Court erred in making a finding contrary to what the jury could have done if given the chance.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case remanded for trial.

Respectfully submitted,

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
210-225-0909
hgarlaw@outlook.com

Attorney for Appellant Emilio Lira

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, the foregoing document was served on all parties

or their counsel of record through the CM/ECF system.

James F. Barrett
Michelle Nasser
DOWD BENNETT, LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314-889-7300 Telephone
314-863-2111 Facsimile

Shannon B. Schmoyer
SCHMOYER REINHARD, LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
210-447-8033 Telephone
210-447-8036 Facsimile

Humberto G. Garcia

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**          **22-50141**
**Short Case Caption:**   **Emilio Lira v. Edward Jones**

The foregoing document complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared used a proportionally-spaced typeface and includes 4,893 words and 29 pages long.

Date: July 6, 2022          Signature: _____

                                          Name: Humberto G. Garcia