**Case No. 22-50141**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

EMILIO LIRA,

*Plaintiff-Appellant,*

v.

EDWARD JONES INVESTMENTS, also known as
EDWARD D. JONES & COMPANY, L.P.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas

No. 5:20-CV-7

Hon. Jason Pulliam

## BRIEF FOR APPELLEE

JAMES F. BENNETT
  *Counsel of Record*
ELIZABETH C. CARVER
DOWD BENNETT LLP
7733 Forsyth Blvd., Ste. 1900
St. Louis, MO  63105
Telephone:  (314) 889-7300
Facsimile:  (314) 863-2111
jbennett@dowdbennett.com
ecarver@dowdbennett.com

Counsel for Appellee
Edward Jones Investments, also known as
Edward D. Jones & Company, L.P.

## CERTIFICATE OF INTERESTED PERSONS

No. 22-50141

*Lira v. Edward Jones Investments, also known as Edward D. Jones & Co., L.P.*

The undersigned counsel of record certifies that Appellee Edward Jones Investments a/k/a Edward D. Jones & Co., L.P. is a wholly owned subsidiary of The Jones Financial Companies, L.L.L.P. and no publicly held corporation owns 10% or more of its stock. The undersigned counsel of record also certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Emilio Lira
Appellant

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
San Antonio, Texas 78201
Attorney for Appellant

Edward Jones Investments
a/k/a Edward D. Jones & Co., L.P.
Appellee

James F. Bennett
Elizabeth C. Carver
Michelle Nasser
DOWD BENNETT LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314-889-7300 Telephone

314-863-2111 Facsimile

Shannon B. Schmoyer
SCHMOYER REINHARD, LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
210-447-8033 Telephone
210-447-8036 Facsimile
Attorneys for Appellee

By: _/s/ James F. Bennett_
    James F. Bennett

Attorney for Appellee Edward Jones
Investments a/k/a Edward D. Jones & Co.,
L.P.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellant Emilio Lira has waived oral argument, and defendant-appellee Edward Jones Investments, also known as Edward D. Jones & Company, L.P., agrees that oral argument is not needed in this case because the issue raised is straightforward and may be decided on the briefing alone.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS...................................................................................iv

TABLE OF AUTHORITIES ............................................................................ vi

STATEMENT OF THE ISSUE...........................................................................1

STATEMENT OF THE CASE............................................................................1

 A.  Factual Background.............................................................................3

   1.  Plaintiff's 2016 lawsuit. ..........................................................3

   2.  FINRA's and Edward Jones's reporting requirements. ..............4

   3.  Plaintiff's violation of Edward Jones's Reportable Events Policy. .......................................................................................7

   4.  Termination of Plaintiff's employment. ..................................10

   5.  Texas Workforce Commission unemployment proceedings. .........................................................................13

   6.  Plaintiff's EEOC charge of retaliation. ....................................15

 B.  Procedural History..............................................................................16

   1.  The complaint. ........................................................................16

   2.  Edward Jones's motion for summary judgment. ......................17

   3.  The district court's order granting summary judgment. ...........19

SUMMARY OF THE ARGUMENT ....................................................................20

ARGUMENT ..................................................................................................23

 Standard of Review............................................................................23

I.    The District Court Properly Granted Summary Judgment to
      Edward Jones on Plaintiff's Retaliation Claim. ...................................23

      A.    The district court properly found that Plaintiff could not
            establish the "causal connection" element of a prima facie
            case of retaliation. ....................................................................24

      B.    The district court properly held that Edward Jones
            presented legitimate, nonretaliatory reasons for its
            termination of Plaintiff's employment.....................................33

            1.    Edward Jones's reasons for Plaintiff's termination
                  were neither illegitimate nor retaliatory. ......................35

            2.    Edward Jones's explanations for Plaintiff's
                  termination were not pretextual.....................................38

CONCLUSION...........................................................................................44

CERTIFICATE OF SERVICE .............................................................45

CERTIFICATE OF COMPLIANCE....................................................46

# TABLE OF AUTHORITIES

## CASES

*Besser v. Tex. Gen. Land Office*,
  834 F. App'x 876 (5th Cir. 2020) .................................................................. 26, 31

*Brown v. Wal-Mart Stores E., L.P.*,
  969 F.3d 571 (5th Cir. 2020) ........................................................................ 24, 27

*Chapman v. AI Transp.*,
  229 F.3d 1012 (11th Cir. 2000) ...........................................................................36

*Clark Cty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)..............................................................................................27

*Cutrera v. Bd of Supervisors of La. State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ...............................................................................25

*E.E.O.C. v. Rite Way Service, Inc.*,
  819 F.3d 235 (5th Cir. 2016) ...............................................................................30

*Garcia v. Prof'l Contract Servs., Inc.*,
  938 F.3d 236 (5th Cir. 2019) ...............................................................................27

*Gosby v. Apache Indus. Servs., Inc.*,
  30 F.4th 523 (5th Cir. 2022) ................................................................................40

*Hutson v. McDonnell Douglas Corp.*,
  63 F.3d 771 (8th Cir. 1995) .................................................................................37

*Ladner v. Walmart, Inc.*,
  834 F. App'x 893 (5th Cir. 2020) ........................................................................26

*Manning v. Chevron Chem. Co.*,
  332 F.3d 874 (5th Cir. 2003) ........................................................................ 26, 31

*McDonnell Douglas Corporation v. Green*,
  411 U.S. 792 (1973)..............................................................................................23

*McVille v. Inter-Cmty. Healthcare, Inc.*,
  460 F. App'x 353 (5th Cir. 2012) ........................................................................37

*Medina v. Ramsey Steel Co.*,
  238 F.3d 674 (5th Cir. 2001) .......................................................... 26, 31

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
  245 F.3d 507 (5th Cir. 2001) ................................................................33

*Owens v. Circassia Pharm., Inc.*,
  33 F.4th 814 (5th Cir. 2022) ....................................... 23, 24, 36, 40, 43

*Phillips v. Caris Life Scis., Inc.*,
  715 F. App'x 365 (5th Cir. 2017) ........................................................29

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*,
  810 F.3d 940 (5th Cir. 2015) ................................................................24

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
  31 F.4th 990 (5th Cir. 2022) ......................................................... 23, 24

*Shirley v. Chrysler First, Inc.*,
  970 F.2d 39 (5th Cir. 1992) ......................................................... 27, 28

*Yogi Metals Grp., Inc. v. Garland*,
  38 F.4th 455 (5th Cir. 2022) ................................................................23

## STATUTES

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ........................ 1, 16, 30

## OTHER AUTHORITIES

Financial Industry Regulation Authority, Rules & Guidance, Article I
  Definitions, https://www.Finra.org/rules-guidance/rulebooks/corporate-
  organization/article-i-definitions..............................................................4

## STATEMENT OF THE ISSUE

Whether the district court properly granted Edward Jones's motion for summary judgment on Plaintiff's claim for retaliation under Title VII of the Civil Rights Act when Plaintiff could not establish a prima facie case of retaliation and, in any event, Defendant had legitimate and nondiscriminatory reasons for Plaintiff's termination, and Plaintiff had no evidence of pretext.

## STATEMENT OF THE CASE

Plaintiff Emilio Lira ("Plaintiff" or "Lira") brings this appeal from the district court's grant of summary judgment to defendant Edward D. Jones & Co., L.P.[1] on Plaintiff's claim for retaliation under Title VII of the Civil Rights Act. Prior to his termination on May 13, 2019, Plaintiff was employed by Edward Jones as a financial advisor ("FA"). He brought a previous lawsuit against Edward Jones in 2016 alleging claims under Title VII, and after the United States District Court for the Western District of Texas granted summary judgment to Edward Jones in 2019, that court taxed Edward Jones's costs against Plaintiff on April 16, 2019.

Edward Jones's FAs are registered with and subject to the regulations of the Financial Industry Regulatory Authority (FINRA), which requires registered

---

[1]Plaintiff filed his Complaint and Amended Complaint against "Edward Jones Investments a/k/a Edward D. Jones & Co., L.P." ROA.10, 55. "Edward Jones Investments" is a DBA for Edward D. Jones & Co., L.P. ("Edward Jones" or the "Firm"), a registered broker-dealer and financial advisor that employed Plaintiff before his termination on May 13, 2019. ROA.58, 83, 84.

persons to disclose any unsatisfied judgments against them. To facilitate its FAs' compliance with FINRA's disclosure requirements, Edward Jones's internal policies require FAs to report any unsatisfied judgments to it within 24 hours after the FA receives notice of such a judgment. Although Plaintiff was thus required to report the judgment for costs by April 17, 2019, he failed to do so. When a member of Edward Jones's Reportable Events Team—charged with assisting employees in complying with FINRA's reporting obligations—directed Plaintiff on two occasions to disclose the judgment by a given deadline, he failed to comply both times. After he finally did report the judgment, Plaintiff sent an email to the Reportable Events Team member accusing the Firm and its employees of "behav[ing] like a white supremacist or a colluder of white supremacist."

Edward Jones terminated Plaintiff five days after he sent the email, based on his unprofessional use of derogatory language in the email and his failure to timely respond to the Reportable Events Team's inquiries, both in violation of Firm policies.  Plaintiff subsequently sued Edward Jones a second time, alleging his termination was in retaliation for complaining internally of discrimination at the Firm in 2014, filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in 2016, filing his first lawsuit against Edward Jones that same year, participating in that lawsuit, and opposing Edward Jones's summary judgment motion in that lawsuit.

The district court granted summary judgment to Edward Jones on February 2, 2022, holding that Plaintiff could not establish the causation element of a prima facie case of retaliation, and that even if he could, Edward Jones's reasons for terminating his employment were legitimate and nonretaliatory, and Plaintiff had no evidence of pretext. This appeal followed.

### A.    Factual Background.

#### 1.    Plaintiff's 2016 lawsuit.

Plaintiff, who is Hispanic/Latino, was employed by Edward Jones as an FA from 2005 until his termination on May 13, 2019. ROA.56, 58. In 2014, Plaintiff lodged an internal complaint alleging he had been discriminated against on the basis of his race and ethnicity when he was not considered for a transfer to Edward Jones's branch office in Uvalde, Texas. ROA.56. More than a year later, on February 8, 2016, Plaintiff filed a charge of discrimination with the EEOC and the Texas Workforce Commission. ROA.57, 83. Plaintiff filed suit against Edward Jones on October 14, 2016, styled as *Lira v. Edward Jones*, 16-CV-1028-DE (W.D. Tex.) (the "2016 lawsuit"), alleging discrimination and retaliation based on race and national origin. ROA.57, 83.

After briefing by both parties, the district court granted Edward Jones's motion for summary judgment in the 2016 lawsuit on March 12, 2019, and dismissed Plaintiff's claims with prejudice. ROA.57, 84, 410. On April 16, 2019, the district

court taxed Edward Jones's costs against Plaintiff in the amount of $5,322.45, which costs became "included in the judgment." ROA.437.

### 2.    FINRA's and Edward Jones's reporting requirements.

Edward Jones is subject to regulations established by FINRA—an independent, Congressionally-authorized, nongovernmental organization that writes and enforces rules governing registered broker-dealer firms in the United States. *See* ROA.254. As part of its oversight efforts, FINRA requires any person engaged in the securities business—which includes all Edward Jones FAs—to register with FINRA by completing its Uniform Application for Securities Industry Registration or Transfer (Form U4). *See* ROA.257-97. Section 14 of the Form U4 contains "Disclosure Questions," Question 14M of which requires registered persons to disclose unsatisfied judgments: "Do you have any unsatisfied judgments or liens against you?" ROA.268-70.

Under FINRA by-laws, registered persons must ensure their U4s are "kept current at all times by supplementary amendments via electronic process or such other process as the Corporation may prescribe to the original application."[2] ROA.297. Registered persons must update U4 disclosures within 30 days of learning

---

[2]The by-laws define "Corporation" to "mean[] the National Association of Securities Dealers, Inc. or any future name of this entity." https://www.Finra.org/rules-guidance/rulebooks/corporate-organization/article-i-definitions (last visited August 22, 2022).

of an event FINRA requires to be disclosed. ROA.297. FINRA charges a late disclosure fee of up to $1,575 when a disclosure event is not reported in a timely manner. ROA.299, 300.

Although each registered person is responsible for reporting all disclosure events on a Form U4, Edward Jones assists its more than 19,000 FAs in meeting their reporting obligations, including by submitting U4s and amendments on the FAs' behalf. ROA.307:10-16, 308:1-6, 312:17-22, 314:24-315:8. To do so, Edward Jones has a Compliance Resolution Reportable Events Team composed of branch office employees, including—at times relevant to this appeal—Phil Toben and Leigh Drnec. ROA.310:23-311:7, 312:17-22.

Plaintiff's employment agreement, signed when he began his employment as an FA at Edward Jones, set forth conditions of that employment. ROA.206:3-207:4. One such condition Plaintiff agreed to was to notify Edward Jones promptly if, among other things, any judgments were entered against him during the course of his employment. ROA.206:6-15, 658. He also agreed to cooperate with the Firm's Compliance or Field Supervision Departments in any investigation or inquiry they might undertake. ROA.206:18-207:1, 659.

Edward Jones's FAs are also subject to its policy titled "Arrest, Bankruptcy, Other Reportable Events" ("Reportable Events Policy" or "Policy"). ROA.666. That policy requires that "[a]ll associates must disclose [judgments] **by the end of the**

**next business day after the event has occurred.**" ROA.666 (emphasis in original). The Policy explains that the reporting obligations are necessary to comply with FINRA reporting obligations. ROA.667; *see also* ROA.204:10-18 (Plaintiff's testimony agreeing that the purpose of the Policy, including the next-day reporting obligation, is to assist Edward Jones in helping its thousands of FAs comply with FINRA reporting requirements).

In addition to the Policy, Edward Jones issues periodic reminders regarding reportable events and has other policies that reiterate the importance of complying with policies and procedures, including compliance inquiries. ROA.670-71, 673-74. Like the Reportable Events Policy, the 2018 Compliance Alert states that "[a]ll associates must report certain incidents to the Reportable Events team in Compliance, including: … Judgments, liens or levies." ROA.670. The Alert also explains why reporting these events is necessary and emphasizes that an FA must "notify the firm by the end of the next business day after the associate has notice that the event has occurred." ROA.670-71.

Underscoring the importance of compliance with all Firm policies, Edward Jones's policy titled "Failure to Comply with Policies and Procedures" states that "[a]ny associate who fails to comply with the firm's procedures, or attempts to circumvent or override the firm's policies and procedures, is subject to immediate disciplinary action by the firm at its sole discretion, including, but not limited to,

heightened supervision, fines, *termination of employment*, and reporting to the regulatory authorities." ROA.673 (emphasis added).

### 3.    Plaintiff's violation of Edward Jones's Reportable Events Policy.

Both FINRA by-laws and Edward Jones's Reportable Events Policy required Plaintiff to report the April 16, 2019 judgment against him. ROA.297 (FINRA requirement that U4 amendments be filed "not later than 30 days after learning" of the reportable event); ROA.666 (Reportable Events Policy requiring associates to "disclose [judgments] by the end of the next business day after the event has occurred."); ROA.218:8-12 (Plaintiff testifying that the judgment had to be reported under Edward Jones's Reportable Events Policy); ROA.219:13-18 (Plaintiff testifying that he "agree[s]" that by not reporting the judgment within one business day of learning it, he had failed to abide by the Policy). Because Plaintiff did not report the judgment to Edward Jones, the Reportable Events Team contacted him regarding the unreported judgment. ROA.219:19-23.  On April 29, 2019, Leigh Drnec—a Senior Paralegal with the Team—emailed Plaintiff, informing him that "The Reportable Events Team learned a judgment was recently entered against you" that had not been reported to the Team "as required by Firm policy." ROA.455. Ms. Drnec directed Plaintiff to "[p]lease go to" the appropriate internal webpage "to report the judgment by close of business tomorrow." ROA.455.

Plaintiff ignored Ms. Drnec's directive and did not report the judgment by the April 30 deadline.[3] ROA.221:12-25, 227:6-17, 228:18-24. Plaintiff did not take Ms. Drnec's email seriously, ROA.479:13-15, which he admitted was "[o]bviously … a mistake." ROA.481:1-5.

When Plaintiff had still not reported the judgment more than a week later, Ms. Drnec sent him a second email on May 7, 2019. ROA.808. Ms. Drnec observed in this email that Plaintiff had not responded to her April 29 email, and she instructed him to "[p]lease report this judgment before the end of the day" on May 7. ROA.222:3-223:11, 808. Again, however, Plaintiff did not report the judgment against him by the end of the day on May 7, the deadline imposed by the Reportable Events Team. ROA.224:1-13. Instead, Plaintiff waited until May 8, 2019, to report the April 16 judgment—a full three weeks after the "end of the next business day" deadline imposed by the Reportable Events Policy. ROA.224:14-16, 829.

---

[3]The 2019 judgment was not the first reportable event Plaintiff failed to report in violation of the Policy. In 2015, Edward Jones issued Plaintiff a Letter of Education after FINRA notified it that Plaintiff had two unreported judgments totaling almost $25,000. ROA.208:17-210:6, 211:15-212:9, 783-85. The Letter of Education required Plaintiff to take a course titled "Compliance: Reporting Requirements," which reinforced Edward Jones's policy requiring FAs to report information relating to a reportable event "by the end of the next business day after the event has occurred." ROA.788-89. The course also reaffirmed that failing to respond to requests for information on reportable events could subject an FA to disciplinary action. ROA.798. Plaintiff completed the course as the Letter of Education required. ROA.801-02.

Plaintiff informed Ms. Drnec by email on May 8, 2019, that he had reported his judgment. ROA.229:3-10, 832.  In response, Ms. Drnec asked why he was just then reporting the judgment and pointed out that he had received a Letter of Education in 2015 for "unreported events." ROA.229:13-21, 831-32. Ms. Drnec further advised that his "amended U4 reflecting this judgment is due to FINRA on Friday," and that she would "be forwarding [him] a draft U4 before then." ROA.230:13-20, 832.

Later that day, Plaintiff replied to Ms. Drnec by email, stating in relevant part:

I am upset and in disbelief that the judgment even occurred.  Because I am human, It [*sic*] has taken me a while to come to terms with it. I will be more than happy to explain myself to FINRA for my lack of timely reporting.  Maybe FINRA can chime in on the firms [*sic*] discriminatory and fraudulent behavior after my explanation.

I don't feel safe in this firm when we behave like a white supremacist or a colluder of white supremacist [*sic*] would as it relates to our on-boarding of Financial Advisors into these massive offices in an unsafe, hidden and illegally discriminatory manor [*sic*].

ROA.831.[4]

Steve Rarick, Edward Jones's Department Leader for Associate Relations, talked to Ms. Drnec within a few days after she received Plaintiff's May 8 email. ROA.327:8-328:2. Mr. Rarick characterized Ms. Drnec as "concerned, taken aback, horrified that somebody referred to her as a white supremacist in response to a

---

[4]Although Plaintiff sent Ms. Drnec two emails on May 8, 2019, for ease of reference this second email is referred to herein as Plaintiff's "May 8 email." ROA.831.

routine compliance investigation." ROA.327:13-328:2. Plaintiff acknowledged it was "possible" that Ms. Drnec may not have felt he was treating her with the dignity and respect she is accustomed to from the FAs she assists. ROA.233:25-234:6. He further stated that he was referring to Edward Jones and some of its leaders as behaving like white supremacists "in the way they onboard people." ROA.235:20-236:1. Plaintiff conceded that calling a person or entity a "white supremacist" is "derogatory and offensive." ROA.231:23-232:1.

### 4.    Termination of Plaintiff's employment.

Phil Toben is senior compliance counsel at Edward Jones and leads a group responsible for, among other things, certain FINRA filings. ROA.306:2-4, 10-15. Mr. Toben was made aware of Plaintiff's May 8 email to Ms. Drnec and viewed Plaintiff's statement that "we behaved like a white supremacist or a colluder of white supremacist" as unprofessional conduct on Plaintiff's part. ROA.312:23-314:9. Mr. Toben referred the email to the Firm's "Associate Relations and legal" departments. ROA.313:7-12, 314:1-9.

Upon Mr. Toben's referral, Steve Rarick made the decision to terminate Plaintiff's employment with Edward Jones. ROA.332:16-22. Mr. Rarick based his decision on what he determined was "an inappropriate and unprofessional response"

by Plaintiff "to a routine compliance inquiry."[5] ROA.328:24-329:4, 332:23-333:4. As Department Leader for Associate Relations, Mr. Rarick has terminated the employment of white FAs for using derogatory language. ROA.331:9-18. In each termination, including Plaintiff's, Mr. Rarick made a subjective decision that the language at issue violated Edward Jones policy, and that termination was the appropriate discipline for the violation. ROA.198-99, 1109:14-19.

That Plaintiff's May 8 email was in response to a "routine compliance inquiry" informed Mr. Rarick's conclusion that the email was unprofessional:

> The context of it is we have a paralegal in our reportable events area that was asking a question as was part of her job.  And in the response, Mr. Lira told her he didn't respond timely because the firm including her were white supremacists. I found that to be – once again, that's part of my role to review those complaints.  And I found that to be inappropriate, unprofessional and unacceptable.

---

[5]Edward Jones's Anti-Harassment Policy—the "Purpose" of which states that Edward Jones "respect[s] personal dignity in many ways, one of which is a clear policy prohibiting harassment in any form"—states that "[t]he firm does not view harassment only from a legal perspective, but also as an issue of treating people with dignity and respect," and "[a]nyone who violates this policy will be subject to disciplinary action, up to and including termination of employment." ROA.676-78, 680. Among the examples of prohibited harassing conduct listed in the policy is "Electronic (including derogatory statements or posting in any electronic media platform, including emails, Facebook, Twitter, etc.)." ROA.676, 677, 680.  The Policy further provides that when a potential incident of harassment is properly reported, "[i]f the firm concludes that a violation of this policy has occurred, appropriate disciplinary action will be taken, up to and including termination of employment."  ROA.677.

ROA.334:11-23. A "secondary reason" Mr. Rarick deemed it appropriate to terminate Plaintiff's employment was Plaintiff's "failure to respond to a compliance inquiry." ROA.333:16-334:6 ("[I]f he had reported this information or responded in a timely manner and not responded inappropriately, I likely would not have been involved and he would not have been terminated.").

On May 13, 2019, Mr. Rarick had a telephone call with Plaintiff to discuss the May 8 email. ROA.835-36. Mr. Rarick's notes indicate that Plaintiff apologized during the call and agreed his May 8 email was rude. ROA.835-36. Mr. Rarick informed Plaintiff that his employment was being terminated, effective immediately, due to his unprofessional conduct. ROA.836. Had it not been for Plaintiff's May 8 email, Mr. Rarick would not have become involved with the compliance inquiry regarding Plaintiff's failure to report the judgment against him and would not have terminated Plaintiff's employment. ROA.335:2-5.

Plaintiff understands that the primary reason his employment with Edward Jones was terminated was the inappropriate and unprofessional nature of his May 8 email, sent in response to a routine compliance inquiry from a paralegal charged with assisting him in complying with his FINRA requirements. ROA.237:24-238:11, 239:3-11, 240:6-11, 249:20-250:3, 502 (EEOC Interview Notes indicating Plaintiff said, "I was terminated for being unprofessional" for including in the May 8 email to Ms. Drnec that Edward Jones was "behaving as white supremacist or

colluders of white supremacist."). In notes submitted in connection with his appeal from the denial of his post-termination application for unemployment benefits, Plaintiff stated that "[i]n the termination call Steve Rarick focused 90% of [the] call on how 'I crossed the line by calling them white supremist [sic] and/or colluders of white supremist [sic]." ROA.509-10; *see also* ROA.477:11-16 (Plaintiff's testimony before Texas Workforce Commission Appeal Tribunal conceding that Mr. Rarick told him he was being terminated because he "cross[ed] the line" in his May 8 email).

On May 23, 2019, Edward Jones submitted Plaintiff's U5 to FINRA, stating as "Reason for Termination" that Plaintiff's employment had been terminated due to "Failure to provide timely responses to Compliance inquiries; unprofessional conduct." ROA.842-43. Weeks later, on June 17, 2019, Plaintiff paid the costs that had been taxed against him in the 2016 lawsuit. ROA.1030.

### 5.    Texas Workforce Commission unemployment proceedings.

On June 4, 2019, Plaintiff was approved for unemployment benefits without disqualification under Section 207.044 of the Texas Unemployment Compensation Act. ROA.516. Edward Jones appealed the decision, and after three days of testimony and the presentation of other evidence, the Texas Workforce Commission Appeal Tribunal issued its Decision reversing the approval of benefits. ROA.516-518. In its Findings of Fact, the Appeals Tribunal described the relevant events as follows:

The employer discharged the claimant for failing to report a judgement as required by policy as well as for behaving in an inappropriate manner. The employer reprimanded the claimant in 2015 for failing to report a judgment. At that time, the employer had the claimant re-read its policy on reporting judgements. In 2016, the employer reminded the claimant that he was to advise the employer of when he had satisfied the judgement as the company was required to report it to the appropriate regulatory agency. On April 29, 2019, the compliance department contacted the claimant to inform him he had failed to report a judgement. At that time, the employer instructed the claimant to properly report the judgement as required by close of business the following day. When the claimant failed to respond, the compliance department sent a second email on May 7, 2019 once again instructing the claimant to report the judgement. The claimant responded on May 8, 2019 and the compliance department then asked why it had taken so long for the claimant to reply to its request especially as he had already been reprimanded in the past for such things. The claimant responded with an inappropriate email which included derogatory language against the employer. When the employer spoke to the claimant regarding the email, he indicated he was just expressing his opinion. The employer then terminated the claimant.

ROA.516 (varying spellings of "judgment" in original).

Based on these facts, the Appeals Tribunal reached the following conclusion:

In the instant case, the claimant had been warned before that he was required to report judgments per company policy. Furthermore, the employer had to contact the claimant twice before he complied with its request. Lastly, although the claimant was expressing an opinion, his email was unprofessional and inappropriate. **The claimant's actions were a violation of company policy as well as a mismanagement of his position of employment, both of which constitute misconduct connected with the work.** The claimant will be disqualified under Section 207.044 of the Act.

ROA.517 (emphasis added). Accordingly, on October 4, 2019, the Tribunal reversed the June 4, 2019 determination that had initially approved Plaintiff to receive unemployment benefits.  ROA.514, 517, 518.

Plaintiff appealed the Appeal Tribunal's Decision. ROA.509-12. In a document titled "Appeal Notes" submitted with his appeal form, Plaintiff argued that his "termination was a pretext to the fact that I filed a long and expressive civil action against the firm which got dismissed on technicalities." ROA.511. Plaintiff did not mention any protected activity he engaged in after the filing of the 2016 lawsuit. ROA.511. "After due consideration of the decision and the complete records," on January 7, 2020, the Texas Workforce Commission "adopt[ed] the findings of fact and conclusions of law of the Appeal Tribunal." ROA.522.

### 6.    Plaintiff's EEOC charge of retaliation.

On August 22, 2019, Plaintiff initiated an online inquiry with the EEOC. ROA.486. According to the EEOC's interview notes, Plaintiff "expressed he was not terminated [for whistleblowing] but for not letting the company know about the $5K judgement against him." ROA.488; *see also* ROA.247:7-21. The notes further reflect Plaintiff's statement that "[t]he company fired [him] two months after the judgement of having to pay $5K for his response to the company. Based on his unprofessional statement." ROA.488. In the Charge of Discrimination ("EEOC Charge") Plaintiff signed on September 26, 2019, he stated in relevant part:

The actual reason for my termination was to retaliate against me for making and filing the charge of discrimination, filing a lawsuit alleging discrimination against Edward Jones, participating and prosecuting the lawsuit, and resisting their efforts by Edward Jones to dismiss the lawsuit. The making, filing of the charge of discrimination, the filing of the lawsuit alleging discrimination, the prosecution and participating in the lawsuit, and resisting the efforts by Edward Jones to dismiss the lawsuit were all protected activities under 42 USC 2000e-3(a).

ROA.491-92.

The EEOC informed Plaintiff that "based on his facts … we would not be able to find a violation of the law based on the statement as it did not meet the elements of proof regarding a prima facie case." ROA.488. The EEOC issued a notice of dismissal and right-to-sue letter dated October 18, 2019. ROA.489.

## B.    Procedural History.

### 1.    The complaint.

Plaintiff filed this lawsuit against Edward Jones on January 6, 2020. ROA.10. After Edward Jones moved to dismiss the complaint, ROA.39, Plaintiff filed an amended complaint on May 26, 2020 (the "Complaint"). ROA.55.

Plaintiff's Complaint alleges a single claim for retaliation under 42 U.S.C. §2000e-3(a), asserting that Edward Jones had retaliated against him by terminating his employment "for having engaged in activities expressly protected by 42 U.S.C. §2000e-3(a)." ROA.58, 61. The Complaint identifies five "protected activities" that Plaintiff alleges led to his termination: (1) his filing of an internal complaint of discrimination with Edward Jones on or about November 13, 2014; (2) his filing of

16

an EEOC charge against Edward Jones in 2016; (3) his filing of the 2016 lawsuit against Edward Jones; (4) his giving of a deposition during the 2016 lawsuit;[6] and (5) his filing of a response on January 9, 2019, in opposition to Edward Jones's summary judgment motion in the 2016 lawsuit. ROA.56-57, 60. The Complaint characterizes Plaintiff's allegation as follows:

> The actual reason for Plaintiff's termination was to retaliate against Plaintiff for making and filing the internal charge of discrimination, filing the charge of discrimination with the EEOC and the Texas Workforce Commission Civil Rights Division; for filing a civil lawsuit against Defendant alleging various acts of unlawful employment discrimination, for participating and prosecuting the lawsuit, and resisting Defendant's efforts to dismiss the lawsuit.

ROA.60.

### 2. Edward Jones's motion for summary judgment.

Edward Jones moved for summary judgment on March 10, 2021. ROA.157. It argued first that Plaintiff could not establish the causation element of a prima facie case of retaliation:  that is, a causal connection between the protected activities alleged in the Complaint and his termination. Alternatively, Edward Jones asserted that even assuming Plaintiff could establish a prima facie case, it had provided legitimate, nondiscriminatory reasons for his termination, and no evidence existed that he would not have been terminated but for a retaliatory motive. ROA.165-66.

---

[6]Neither the Complaint nor Plaintiff's brief in this Court mentions the date Plaintiff's deposition was taken in the 2016 lawsuit, but it appears to be November 13, 2017. ROA.463-65.

Plaintiff filed his response in opposition to Edward Jones's motion on March 24, 2021, along with his eight-page declaration, addressing allegations of discrimination going back to 2014 and including emails he sent in March and May 2019. ROA.1053-60. In response to Plaintiff's opposition, Edward Jones filed both (a) a Partial Motion to Strike and Objections to the Declaration of Plaintiff Emilio Lira and Exhibit R to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Motion to Strike") and (b) a Reply in Support of Defendant's Motion for Summary Judgment ("Reply"). ROA.552, 563. In its Motion to Strike, Edward Jones raised several objections to almost all paragraphs of Plaintiff's declaration, on grounds including a lack of factual support or basis for personal knowledge. ROA.555-60.

In its Reply, Edward Jones argued that Plaintiff was improperly relying on purported protected acts that were neither raised in his EEOC Charge nor alleged in the Complaint, and/or that in any event did not constitute protected acts. ROA.564-66. With respect to the alleged protected activities Plaintiff did raise in his EEOC Charge and Complaint, Edward Jones pointed to Plaintiff's failure to present any admissible evidence to establish the required causal connection between any of those activities and his termination. ROA.567. Likewise, Edward Jones argued that Plaintiff had not offered any admissible evidence to rebut the legitimacy of Edward Jones's stated reasons for terminating his employment. ROA.568-73.

18

### 3.     The district court's order granting summary judgment.

On February 2, 2022, the district court entered its Memorandum Opinion and Order ("Order") granting Edward Jones's motion for summary judgment and denying as moot its Motion to Strike Plaintiff's declaration. ROA.605.  In denying Edward Jones's objections to Plaintiff's declaration, the Court stated that "[t]he allegedly objectionable evidence is not necessary to the disposition of the pending motion and will not be considered in determining whether genuine disputes of material fact exist regarding the core issue in this case." ROA.608.

In granting summary judgment, the court held that Plaintiff had not made a prima facie case of retaliation because he could not establish the required causal link between the protected activities he alleged and his termination. ROA.614-19. Four of the five protected activities alleged in the Complaint were "temporally …too far removed from his May 13, 2019 termination to establish a prima facie case of retaliation." ROA.615. As for the remaining protected activity alleged in the Complaint—his opposition to Edward Jones's summary judgment motion in the 2016 lawsuit—the court noted Mr. Rarick's statement that at the time he terminated Plaintiff, he was unaware that Plaintiff had opposed the summary judgment motion. ROA.619. The court added that Plaintiff had no evidence to rebut Mr. Rarick, and that the four-month period between his summary judgment opposition and his termination "standing alone, is insufficient to establish the causation element of

Lira's prima facie case." ROA.619. And with respect to the May 8 email and other emails Plaintiff sent internally at Edward Jones on March 19, 2019 and May 9, 2019, ROA.1058, 1211, 1218-22, the court held that because Plaintiff raised them for the first time in his response to the summary judgment motion in this case, "these emails are not properly before the court as bases for Lira's retaliation claim." ROA.616.

Finally, the trial court held that even if Plaintiff could establish a prima facie case of retaliation, "Edward Jones satisfied its burden by presenting evidence of legitimate, nonretaliatory reasons supporting Lira's termination." ROA.619. Those reasons were (1) Plaintiff's "failure to timely respond to Ms. Drnec's request that he report the March 12, 2019 judgment against him; [and] (2) his 'inappropriate and unprofessional' response to Ms. Drnec's email." ROA.619. Because Plaintiff "present[ed] no competent summary judgment evidence in rebuttal," he did "not [meet] his burden to establish pretext." ROA.620-21.

The court also entered its Final Judgment on February 2, 2022, dismissing the action with prejudice. ROA.622. Plaintiff filed his notice of appeal to this Court on March 1, 2022. ROA.635.

## SUMMARY OF THE ARGUMENT

The district court properly granted summary judgment to Edward Jones on Plaintiff's retaliation claim for two reasons. First, Plaintiff could not establish a genuine issue of material fact as to the causation element of a prima facie case of

retaliation. Plaintiff alleged five protected activities in his Complaint and in his EEOC Charge, all related to his 2016 lawsuit against Edward Jones: (1) his internal complaint of discrimination in November 2014; (2) his 2016 EEOC charge; (3) the filing of the 2016 lawsuit; (4) his giving of a deposition in the 2016 lawsuit; and (5) his filing of an opposition, in January 2019, to Edward Jones's summary judgment motion in the 2016 lawsuit. Although causation may be established at the prima facie stage by showing that a plaintiff's protected activity was followed closely in time by an adverse employment action, the district court held that the first four of the protected activities alleged by Plaintiff were too removed in time from his May 13, 2019 termination to demonstrate the required causal link.

As for the fifth alleged protected activity—Plaintiff's summary judgment opposition—the court held that Plaintiff could not establish a causal connection between it and his termination for two reasons. First, the four-month gap between that filing and Plaintiff's termination was too temporally remote, on its own, to establish causation. And second, the undisputed testimony established that Steve Rarick, who made the decision to terminate Plaintiff's employment, was unaware at the time of the termination that Plaintiff had filed a summary judgment opposition in the 2016 lawsuit. Without any evidence of that awareness, Plaintiff cannot establish a genuine issue of material fact as to the required causal connection between his summary judgment opposition and his termination.

21

In his summary judgment opposition in this case, Plaintiff argued that the May 8 email and other emails he sent internally at Edward Jones in March and May 2019 constituted complaints of unlawful discrimination that caused his termination. The trial court correctly rejected Plaintiff's belated argument, holding that because he had not raised the emails in his Complaint or EEOC Charge, "these emails are not properly before the court as bases for Lira's retaliation claim."

The trial court's grant of summary judgment was also proper because Edward Jones articulated legitimate, nonretaliatory reasons for Plaintiff's termination: his failure to timely respond to Ms. Drnec's requests that he report the judgment against him, and his unprofessional conduct in responding to her email on May 8, 2019. Plaintiff's attempts to demonstrate an inconsistency or contradiction in Edward Jones's explanations for his termination distort the record and ignore his repeated acknowledgements that he was terminated based on the unprofessional nature of his May 8 email, sent in response to Ms. Drnec's routine compliance inquiry. The trial court did not improperly weigh the evidence in determining that Plaintiff had not established any facts that would allow a jury to determine Edward Jones would not have terminated his employment but for his protected activity.

## ARGUMENT

### Standard of Review

Edward Jones agrees with Plaintiff, PlfBr.-7, that this Court reviews *de novo* the district court's Order granting summary judgment, "applying the same standards as the district court." *Yogi Metals Grp., Inc. v. Garland*, 38 F.4th 455, 458 (5th Cir. 2022).

## I.     The District Court Properly Granted Summary Judgment to Edward Jones on Plaintiff's Retaliation Claim.

Plaintiff tacitly acknowledges that the district court properly applied the burden-shifting framework first established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973), in analyzing his retaliation claim. PlfBr.-8. Under that framework, a plaintiff is first required to make a prima facie case of retaliation by showing that (1) he or she participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the materially adverse action. *See, e.g., Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 825, 834-35 (5th Cir. 2022).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for terminating" the plaintiff. *Id.* at 835; *see also Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999-1000 (5th Cir. 2022). Assuming the employer meets that burden of production, the

burden shifts to the plaintiff to prove that the "proffered reason is pretextual." *Owens*, 33 F.4th at 825 (citation omitted); *Saketkoo*, 31 F.4th at 1000 (citation omitted). The ultimate issue in a retaliation case is "'whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision.'" *Owens*, 33 F.4th at 835; *Saketkoo*, 31 F.4th at 1001-02. The burden of proof remains with the plaintiff throughout. *Saketkoo*, 31 F.4th at 999, 1000.

### A. The district court properly found that Plaintiff could not establish the "causal connection" element of a prima facie case of retaliation.

In its Order, the district court held that Plaintiff had not made a prima facie case of retaliation because he could not establish the required causal link between the protected activities he alleged and his termination. ROA.614-19. As the court noted, the "'burden of causation' can be met 'simply by showing close enough timing between [the] protected activity and [the] adverse employment action.'" ROA.615 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)) (alterations original; additional citation omitted); *see also Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) ("The protected act and the adverse employment action must be very close in time to establish causation by timing alone.") (cleaned up).

The court first reviewed the five protected activities Plaintiff alleged in his Complaint and EEOC Charge—(1) his internal complaint of discrimination with Edward Jones in November 2014; (2) his 2016 EEOC charge; (3) the filing of his

2016 lawsuit; (4) his giving of a deposition during the 2016 lawsuit;[7] and (5) his January 9, 2019 filing of an opposition to Edward Jones's summary judgment motion in the 2016 lawsuit. ROA.56-57, 60, 491-92.   The first four of those activities, the court noted, were each "temporally … too far removed from his May 13, 2019 termination to establish a prima facie case of termination." ROA.615.

Next, the court rejected Plaintiff's belated attempt to rely on emails—the May 8 email and ones he sent on March 19 and May 9, 2019, ROA.1211, 1215—as the protected activity underlying his claim: "Because [those] emails were not raised in the amended complaint but raised only in response to the motion for summary judgment, these emails are not properly before the court as bases for Lira's retaliation claim." ROA.616 (citing cases including *Cutrera v. Bd of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

The sole remaining protected activity Plaintiff alleged in the Complaint is his January 2019 filing of an opposition to Edward Jones's summary judgment motion in the 2016 lawsuit. ROA.57. As the district court observed, "the Fifth Circuit has counseled that knowledge of the protected activity paired with timing is key to

---

[7]Although Plaintiff's EEOC Charge describes the fourth protected activity more generically as his "participating and prosecuting the lawsuit," ROA.491-92, the distinction makes no practical difference, as the district court found that even Plaintiff's last act in "prosecuting" the 2016 lawsuit—his January 2019 summary judgment opposition—standing alone, was too temporally removed from his termination "to establish the causation element of Lira's prima facie case." ROA.619.

finding causation. 'A "causal link" is established when the evidence demonstrates that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity."'" ROA.618 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)) (additional citation omitted). *See also Ladner v. Walmart, Inc.*, 834 F. App'x 893, 897 (5th Cir. 2020) ("[T]emporal proximity, without a showing of knowledge, cannot establish causation."); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity.")

The trial court noted Mr. Rarick's statement that at the time he terminated Plaintiff in May 2019, he was unaware that Plaintiff had opposed the summary judgment motion. ROA.619; *see also* ROA.199. Plaintiff, the court added, had no evidence to rebut Mr. Rarick's statement but instead relied on the "temporal proximity alone (the four months between his last protected activity and his termination) … to create a causal link." ROA.619. The court rejected Plaintiff's argument, holding that the four-month period, "standing alone, is insufficient to establish the causation element of Lira's prima facie case." ROA.619. The court cited *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020), holding "that two and one-half months between the protected activity and the adverse employment action, standing alone, is not within the 'very close" proximity that is

26

necessary to establish causation." ROA.618. *See also* ROA.618-19 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)) (citing cases holding that 3-month and 4-month lapses between "an employer's knowledge of protected activity and an adverse employment action" were insufficient "evidence of causality.").

Plaintiff argues that the district court erred in concluding that he did not establish a prima facie case of retaliation. PlfBr.-9. But he cites no case holding that a gap in time of 18 months or more between a protected activity and an adverse employment action is the "close enough timing" required to supply the causal link element of the prima facie case. *See Brown*, 969 F.3d at 577; *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.").

Indeed, Plaintiff cites only one case in his argument on the causal connection element. PlfBr.-9-13. That case, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992), is off the mark here. After a bench trial, the district court held there that the plaintiff's firing in November 1989—14 months after she filed a complaint with the EEOC and two months after the EEOC dismissed it—was in retaliation for bringing the complaint. *Id.* at 42-43.  But the plaintiff in *Shirley* relied on more than temporal proximity to support the causal connection element. "Shirley presented evidence, albeit her own testimony, that her boss … mentioned her EEOC complaint to her at

least twice a week and 'harassed [her] to death about it.'" *Id.* at 43 (alteration original). And although she had a spotless performance record before filing her EEOC complaint, she accumulated three complaints of "flagrant indiscretions or violations" over the following 14 months. *Id.* at 43. As this Court stated, "We find it surprising that suddenly, after Shirley filed her EEOC complaint, problems with her work surfaced." *Id.* Applying a "clearly erroneous" standard of review, this Court upheld the district court's judgment in favor of the Plaintiff. *Id.*

Plaintiff cites *Shirley*'s statement that "[t]he district court considered the lapse of time [between the EEOC charge and the termination] but found that it did not absolve defendant of its responsibility for retaliating against the plaintiff for her filing the EEOC claim." PlfBr.-10 (citing 970 F.2d at 44). The court's statement was in response to Chrysler's argument that "the passage of fourteen months should be legally conclusive proof against retaliation." *Id.* at 43. As this Court recognized, "[t]he district court properly weighed the lapse of time as *one of the elements in the entire calculation* of whether Shirley had shown a causal connection between the protected activity and the subsequent firing." *Id.* at 44 (emphasis added). Again, that "calculation" included evidence *other than* temporal proximity of the required causal link, including her boss's continual harassment regarding her EEOC charge.

In contrast, Edward Jones did not argue that the gap in time between any protected activity on Plaintiff's part and his termination immunized it from liability

but contended that Plaintiff's reliance on temporal proximity alone could not establish the causation element of his prima facie case. Although Plaintiff maintains that "[i]t is the fact that Appellant sued Appellee [in 2016] for unlawful discrimination which is at the heart of Appellee's decision to terminate him," PlfBr.-10, he has no evidence of causation other than his *post hoc, ergo propter hoc* theory. Under this Court's well-established precedent, that does not suffice to submit his claim to a jury.

In response to the holding that his emails, which he did not raise until his summary judgment response, were "not properly before the court as bases for Lira's retaliation claim," ROA.616, Plaintiff does not argue—let alone cite supporting authority—that a trial court may properly consider protected activities not alleged in the Complaint or the EEOC Charge. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370 (5th Cir. 2017) (affirming summary judgment because "Phillips completely failed to plead retaliation claims based on these events in her complaint."). Instead, he claims that he referred to the emails[8] not "for the purposes of adding more protected activities but to shine a light on the big picture, that is, that Appellant was a thorn on the side of Appellee because of his continued complaints and the only way to end it was to terminate him." PlfBr.-11.

---

[8]In his brief, Plaintiff cites his emails at ROA.1211, 1215, 1423, 1426, 1428, 1432, PlfBr.-11, although one of his March 19, 2019 emails is cited multiple times.

Plaintiff's attempt to avoid calling his emails "protected activity" fails. He himself refers to his emails as "complaints of discrimination," PlfBr.-10, which fall squarely within the definition of "protected activity." *See, e.g., E.E.O.C. v. Rite Way Service, Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) ("protected activity can consist of … (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter.'" (quoting 42 U.S.C. §2000e-3(a)). And in asserting that Edward Jones terminated his employment because "it was the only way to end" his "continued complaints," PlfBr.-11, Plaintiff is in effect arguing that his protected activity (complaining of discrimination) caused an adverse employment action (his termination). As the district court held, Plaintiff's retaliation claim falls short because he has no evidence of the required causal link. Plaintiff does not explain how the emails—which, again, he did not mention to the EEOC or in his Complaint—can salvage his prima facie case if they do not constitute protected activity. Nor does he point to evidence that Mr. Rarick was even aware of the emails when he decided to terminate Plaintiff's employment. *See* ROA.582:12-25, 1146:23-1147:1.

Finally, with respect to the district court's conclusion that Plaintiff could not establish the causation element of a prima facie case of retaliation based on his January 2019 summary judgment opposition, Plaintiff points to no evidence that Mr. Rarick, the decisionmaker, was aware of that filing. Instead, he cites to

30

Mr. Rarick's testimony that he was aware of Plaintiff's 2014 internal complaints of discrimination, his 2016 lawsuit and the EEOC charge that preceded it, and of the dismissal of the lawsuit in March 2019. PlfBr.-11 (citing ROA.1305-07). The testimony Plaintiff relies on does not establish that Mr. Rarick knew of any of these events on or before May 13, 2019, the day he decided to terminate Plaintiff's employment.

But even assuming Mr. Rarick was aware of Plaintiff's complaints, EEOC charge, lawsuit, and the dismissal at the time he decided to terminate Plaintiff, that awareness does not amount to awareness of Plaintiff's summary judgment opposition. Without evidence of that awareness, Plaintiff cannot rely on the temporal proximity between his summary judgment opposition and his termination to satisfy the causation element. *See Manning*, 332 F.3d at 883 n.6; *Medina*, 238 F.3d at 684 (establishing the required causal connection requires evidence that the "employer's decision to terminate was based in part on knowledge of the employee's protected activity.") (cleaned up). And even if there were evidence that Mr. Rarick was aware of the summary judgment opposition when he terminated Plaintiff, Plaintiff cites no cases holding that a four-month lapse in time between a protected activity and an adverse employment action suffices to establish causation for purposes of a prima facie case. *See Besser*, 834 F. App'x at 885 (holding that two and one-half month

period did not constitute the "very close proximity that is necessary to establish causation.").

In arguing that he established a prima facie case of retaliation, Plaintiff also refers to the lack of evidence that he "was performing poorly in his job." PlfBr.11-12. But his performance record is irrelevant because he was not terminated for performance issues. Equally immaterial to the causation issue is Edward Jones's announcement on June 24, 2020, of "a plan for combating racism and increasing opportunities for employees of color." PlfBr.-12 (citing ROA.1069). Plaintiff's attempt to read into Edward Jones's announcement of an anti-racism plan an admission that "racism … exist[ed] within the company," PlfBr.-12, is baseless, but in any event the implementation of an anti-racism plan more than a year after his termination cannot supply the required causal connection between that adverse employment action and any protected activity on Plaintiff's part.

Finally, Plaintiff mentions "evidence of the animosity held by Appellee against him." PlfBr.-12. He supports his vague claim of "animosity" by citing (a) his entire eight-page declaration, ROA.1053-60,[9] and (b) a chain of emails dated

---

[9] As mentioned, Edward Jones objected to most of the paragraphs in Plaintiff's declaration on grounds including that the statements lacked personal knowledge, were conclusory, unsupported, and/or irrelevant, and/or constituted hearsay. ROA.555-60. Plaintiff's brief to this Court does not mention Edward Jones's objections or the court's decision not to consider the statements at issue, let alone argue that the court erred in disregarding them.

October 31 and November 3, 2014, for which he provides no context. ROA.1269. It is unclear which paragraph or paragraphs in his declaration Plaintiff views as evidence of the supposed "animosity," but the declaration discusses the same allegations Plaintiff raised in his 2016 lawsuit, *see* ROA.1057, as well as the events leading up to his termination. ROA.1058-60. Plaintiff did not argue in the district court that Edward Jones's alleged animosity established the required causal connection element, *see* ROA.545-46, and has therefore waived the argument. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 n.9 (5th Cir. 2001).

Because the district court properly held that Plaintiff did not establish any genuine issue of material fact as to the causation element of a prima facie case of retaliation, this Court should affirm the Order granting summary judgment in favor of Edward Jones.

### B.    The district court properly held that Edward Jones presented legitimate, nonretaliatory reasons for its termination of Plaintiff's employment.

The trial court held that even if Plaintiff could establish a prima facie case of retaliation, "Edward Jones satisfied its burden by presenting evidence of legitimate, nonretaliatory reasons supporting Lira's termination." ROA.619.   Those reasons were (1) Plaintiff's "failure to timely respond to Ms. Drnec's request that he report the March 12, 2019 judgment against him; [and] (2) his 'inappropriate and

unprofessional' response to Ms. Drnec's email." ROA.619. And because Plaintiff "present[ed] no competent summary judgment evidence in rebuttal," he did "not [meet] his burden to establish pretext." ROA.620-21.

On appeal, Plaintiff conflates the last two steps of the burden-shifting analysis, arguing that the district court erred in finding that Edward Jones's reasons for terminating him "were nonretaliatory and not pretextual." PlfBr.-13. Like his argument on the prima facie case, his discussion of the supposed illegitimacy of Edward Jones's reasons for his termination finds no legal support. Neither of the two cases he relies on involved a retaliation claim, and he cites them only for the unremarkable proposition that a district court should not weigh evidence in ruling on a summary judgment motion. PlfBr.-17. Instead, his argument rests on mischaracterizing Edward Jones's reasons for terminating him and falsely accusing the district court of ignoring evidence. The court, however, did not improperly weigh or ignore evidence. Rather, the undisputed facts establish that Plaintiff was terminated for his unprofessional conduct and for failing to respond timely to Ms. Drnec's requests that he report the judgment against him, and the district court accurately concluded that Plaintiff had no evidence Edward Jones's reasons for his termination were pretextual.

### 1. Edward Jones's reasons for Plaintiff's termination were neither illegitimate nor retaliatory.

While Plaintiff focuses primarily on characterizing Edward Jones's explanations for his termination as inconsistent and contradictory, *see* Section B.2, *post*, he appears to also take issue with the legitimacy of those explanations in two respects. First, as to Edward Jones's explanation that he was terminated in part for his failure to respond timely to compliance inquiries regarding his reporting obligations, Plaintiff mentions twice that Edward Jones was already "aware of the judgment because it was the one who had obtained it against [him]." PlfBr.-14, 16 ("What Appellee was trying to do by way of its 'compliance inquiries' was to get Appellant to report the judgment it already knew about because it secured it."). To the extent that Plaintiff is suggesting the Reportable Events Team should not have pursued him because "Edward Jones knew" about the judgment, he disregards his own admission that Edward Jones's Reportable Events Policy required him to report the judgment, and that by not doing so within one business day of learning of it, he had failed to abide by that policy. ROA.218:8-219:18. As a registered person, Plaintiff was required to comply with FINRA's U4 disclosure and reporting requirements, including by reporting reportable events on a Form U4. *See* ROA.297; *see also* ROA.586:21-587:9. Indeed, the U4 contains sections only the registered person could answer and requires the registered person to acknowledge details being

reported. ROA.270. Plaintiff cites no exception to his obligations under either the Reportable Events Policy or FINRA.

Second, Plaintiff appears to question the legitimacy of Edward Jones's explanation that he was terminated for unprofessional conduct based on his use of the "white supremacist" phrase in his May 8 email. Specifically, Plaintiff notes that "the term 'unprofessional conduct' is not defined in any of [Edward Jones's] policies," and that Mr. Rarick "testified that calling the email 'unprofessional conduct' was a subjective determination on his part." PlfBr.-18. According to Plaintiff, the court erred in "giving credence to [Edward Jones's] subjective contention without considering how the jury would see the use of the terms and whether they would believe it constituted 'unprofessional conduct.'" PlfBr.-19. But this Court in *Circassia Pharmaceuticals* rejected the argument "that employers are barred from using subjective criteria to evaluate employees." 33 F.4th at 833; *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.").

Moreover, allowing an employer's administration of its own employment policies to be second-guessed, without any evidence that the policy or its application was discriminatory or retaliatory, would inject uncertainty into the workplace and

subject employers to unwarranted and burdensome scrutiny of their day-to-day personnel decisions. "[T]he relevant issue in a Title VII case is whether an employer discriminated against its employee, not whether it made a correct disciplinary decision." *McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.")).

Although Plaintiff refers—without citation—to "the evidence of racism existing within the company as mentioned above," PlfBr.-19, Edward Jones's announcement of its plan to combat racism and increase opportunities for employees of color can hardly be viewed as "evidence of racism," let alone evidence that would support an inference that Plaintiff's termination more than a year earlier was infected by a discriminatory or retaliatory motive. Edward Jones properly exercised its business judgment in determining that Plaintiff's use of a vile and derogatory phrase to describe the Firm and its employees constituted unprofessional conduct in violation of its policy, and that termination of his employment was the proper consequence for that violation and his failure to cooperate with Ms. Drnec's compliance efforts.

### 2.    Edward Jones's explanations for Plaintiff's termination were not pretextual.

Plaintiff maintains that Edward Jones offered "inconsistent and contradictory explanations" for his termination, but in fact Edward Jones and the decisionmaker, Mr. Rarick, have consistently stated that Plaintiff was terminated for his unprofessional conduct in responding to a routine compliance inquiry. *See, e.g.,* ROA.199, 836, 842-43, 1066-67. Plaintiff's attempt to demonstrate otherwise is not supported by the record. PlfBr.-14-17.

For example, according to Plaintiff, Edward Jones's July 31, 2019 letter to the Texas Workforce Commission stated that "'among the reasons for the termination was his failure to report a money judgment…,'" but "nowhere … cite[d] as a reason for the termination that [Plaintiff] had engaged in 'unprofessional conduct.'" PlfBr.-15 (citing ROA.1064-67). But in fact, the letter, which states in relevant part as follows, does cite Plaintiff's unprofessional conduct:

> Among the reasons Mr. Lira's employment was terminated by Edward Jones was his failure to timely report a money judgment that had been entered against him and his further failure to timely respond to inquiries from the Edward Jones compliance team charged with ensuring accurate reporting of that judgment by Mr. Lira to the governing regulatory authority. … The attached documents and hearing testimony will demonstrate that EDJ had policies addressing Mr. Lira's failure to report the judgments against him and *failure to conduct himself in a professional manner.* …

***

> Finally, *EDJ workplace policies required that Mr. Lira always conduct himself properly* to ensure that none of his words or acts can

38

be interpreted as harassing, threatening, retaliatory, or discriminatory. The documentary evidence and testimony will conclusively demonstrate that *Mr. Lira violated the aforementioned policies*.

\*\*\*

In closing, Mr. Lira's employment with Edward Jones was *terminated based upon misconduct that included violations of his written employment agreement and employer policies* about which Mr. Lira was fully aware and had specifically acknowledged.

ROA.1064-67 (emphasis added).

Plaintiff also argues that in terminating him for use of the phrase, "white supremacist," Edward Jones in fact "terminated [him] because he voiced complaints of discrimination." PlfBr.-15-16. Again, however, Plaintiff did not allege either in his Complaint or his EEOC Charge that the May 8 email was a protected activity that led to his termination. And even if he had, the undisputed evidence is that Mr. Rarick decided to terminate Plaintiff's employment because he "crossed the line" by referring to the Firm and his colleagues as "white supremacists," which Plaintiff concedes is a "derogatory and offensive" accusation. ROA.231:23-232:1, 237:21-238:11, 477:11-16, 509-10. In other words, it was not that Plaintiff may have been complaining of discrimination, but the unnecessarily extreme and insulting manner in which he chose to do so, and in response to a paralegal who was attempting to assist him.

Plaintiff's attempt to create an inconsistency or contradiction in Edward Jones's explanations for his termination is belied by his own repeated

acknowledgements that he was terminated for the unprofessional nature of his May 8 email, sent in response to a routine compliance inquiry from a paralegal charged with assisting him in complying with his FINRA requirements. *See* ROA.237:21-238:11 (Plaintiff testifying that on May 13, 2019, Mr. Rarick told him Plaintiff's "comment [']white supremacist or colluder of white supremacists['] had crossed the line and … in a sense that I would be terminated for that."); 239:3-11 (same); 240:6-19 (acknowledging Mr. Rarick told him his "white supremacist" comment was unprofessional and that his U5 listed "failure to provide timely responses to compliance inquiries; unprofessional conduct" as the reasons for his termination).

But even if Plaintiff could demonstrate an actual inconsistency in Edward Jones's proffered reasons for his termination, he cites no cases holding that a mere inconsistency or contradiction in an employer's explanation for its employment decision suffices to defeat summary judgment. In fact, in *Circassia Pharmaceuticals* this Court noted that such an inconsistency renders summary judgment inappropriate only if the evidence "makes an employer's decision seem illogical" and would "permit an inference of discrimination":

> We have recently held that evidence of "inconsistent explanations and the absence of clear criteria" in an employer's decisionmaking can be enough to survive summary judgment if, under the facts of a particular case, that inconsistency and lack of criteria could lead to a reasonable inference of pretext. *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 528 (5th Cir. 2022). That kind of evidence makes an employer's decision seem illogical and, therefore, unworthy of credence. But again, "[t]he ultimate determination … is whether, viewing all of the evidence

in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." [citation omitted]. Thus, to survive summary judgment, [the plaintiff] must produce sufficient evidence of implausibility to permit an inference of *discrimination*, not merely an inference that [the employer's] proffered reason is false.

33 F.4th at 830-31 (first alteration and emphasis original).

Here, Plaintiff's recitation of the reasons Edward Jones has advanced for his termination shows only that Edward Jones at times stated that Plaintiff's failure to timely report the judgment against him was "among the reasons" for the decision, while also citing his failure to timely respond to compliance inquiries and his unprofessional conduct. *See* ROA.1064-65 (Edward Jones's counsel's letter to Texas Workforce Commission); ROA.1236 (interrogatory responses). But Plaintiff's failure to report the judgment and his lack of cooperation with the Firm's compliance efforts were, of course, closely related: if Plaintiff had fulfilled his reporting obligations under Firm policy, he would have reported the judgment by April 17, 2019, and Ms. Drnec would not have had to undertake her compliance efforts.

Plaintiff attempts to find a contradiction in Edward Jones's statement in its summary judgment motion that "Plaintiff's employment was not terminated for his failure to report a reportable event." PlfBr.-16 (quoting ROA.173). There is no contradiction, and the statement is accurate. Edward Jones was responding to Plaintiff's allegations that other FAs who did not "timely report matters required to

be reported to FINRA … did not get terminated." ROA.173 (citing ROA.58).

Edward Jones refuted Plaintiff's allegation that he was treated differently than

similarly situated FAs by pointing to his repeated admissions he "was terminated

primarily as a result of his unprofessional conduct":

> Plaintiff admitted in various places—including his Unemployment Benefits Fax Appeal Form, his sworn testimony in the TWC proceedings, his statements reflected in the EEOC Charge Detail Notes, and his deposition testimony—that when his employment was terminated, the Firm was focused on the fact that Plaintiff "crossed the line" by calling the Firm and its leaders white supremacists or colluders of white supremacists in the context of responding to a routine compliance inquiry of a paralegal charged with assisting Plaintiff in complying with FINRA requirements. (record citations omitted).

ROA.173-74.

Plaintiff's failure to timely report the judgment against him was, as Mr. Rarick

testified, "context" for and set in motion the events that led to his termination:

"Without – if he had reported this information or responded in a timely manner and

not responded inappropriately, I likely would not have been involved and he would

not have been terminated." ROA.333:22-334:6. But Plaintiff was not terminated for

his failure to timely report alone, and Edward Jones has never said that he was.

Plaintiff's accusation that the trial court did not consider evidence he offered that no

FA had been terminated for failing to report a reportable event, PlfBr.-18, is thus off

base.

Plaintiff maintains that the district court improperly weighed the evidence in concluding that (a) "[t]here is … no evidence that Edward Jones took any adverse action against Lira for his failure to report the judgment" and (b) Edward Jones terminated Plaintiff for failure "to timely respond to a compliance inquiry" and his unprofessional response to Ms. Drnec's email. PlfBr.-16-17 (quoting ROA.617). But both statements are entirely accurate and amply supported by undisputed evidence, in contrast to *Circassia Pharmaceuticals*, where the plaintiff "presented evidence that directly and specifically contradict[ed] several factual bases for her … eventual termination." 33 F.4th at 833. Plaintiff did in fact miss the reporting deadline set forth in Edward Jones Reportable Events policy, ROA.218:8-16, 219:13-18; he ignored Ms. Drnec's April 29, 2019 email and her direction to report the judgment by April 30, *see, e.g.,* ROA.221:12-25, 227:6-17, 228:18-20, 479:5-15, 481:1-5; he did not report the judgment by the end of the day on May 7 as she directed in her May 7, 2019 email, ROA.224:1-13, 808; he did send the May 8 email, ROA.229:3-6, 831; and he admits that calling a person or entity a "white supremacist" is "derogatory and offensive." ROA.231:22-232:1. Plaintiff has not identified a single relevant issue of fact for a jury to decide.

In sum, the district court properly granted summary judgment because Plaintiff presented no evidence (a) that any protected activity he engaged in caused

his termination or (b) that Edward Jones's explanations for his termination were pretextual.

## CONCLUSION

For the reasons stated, this Court should affirm the district court's Order granting summary judgment to Edward Jones and its Final Judgment dated February 2, 2022.

Dated:  August 24, 2022          Respectfully submitted,


By:  */s/ James F. Bennett*
     James F. Bennett
     Elizabeth C. Carver
     DOWD BENNETT LLP
     7733 Forsyth Blvd., Suite 1900
     St. Louis, MO 63105
     Telephone: (314) 889-7300
     Facsimile: (314) 863-2111

     *Attorneys for Appellee Edward D. Jones*
     *&Co., L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by

using the CM/ECF system.  I certify that all participants in this case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/James F. Bennett*
James F. Bennett
Attorney for Appellee

## CERTIFICATE OF COMPLIANCE

I certify that:

(1) This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,353 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32.2.

(2) This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365® (Version 2207) in Times New Roman with a typeface of 14 points.

Dated: August 24, 2022                    */s/ James F. Bennett*
                                          James F. Bennett
                                          Attorney for Appellee