No. 22-50141

# In the United States Court of Appeals for the Fifth Circuit

EMILIO LIRA

*Plaintiff-Appellant,*

v.

EDWARD JONES INVESTMENTS
ALSO KNOW AS EDWARD D. JONES & COMPANY, L.P.

*Defendant-Appellee*

**On Appeal from the United States District Court
for Western District of Texas**

No. SA-20-cv-00007JKP

**Hon. Jason Pulliam**

**REPLY BRIEF OF APPELLANT**

Emilio Lira

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
San Antonio, Texas 78201
210-225-0909
*hgarlaw@outlook.com*

*Attorney for Appellant Emilio Lira*

## TABLE OF AUTHORITIES

Cases:

*McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012)..4,6


Statutes:

Texas Labor Code §213.007..................................................................6

## REPLY ARGUMENT

It is ironic that Edward Jones argues that "the relevant issue in a Title VII case is whether an employer discriminated against its employee, not whether it made a correct disciplinary decision" as stated in *McVille v. Inter-Cmty. Healthcare, Inc.,* 460 F. App'x 353, 355 (5th Cir. 2012), Def.Br.-37, because the essence of its argument is to try to get the Court to focus on hyper technical points and obfuscate the big picture. If we take a moment to look at the entire history between Emilio Lira and Edward Jones, it is easy to see that is not devoid of discriminatory conduct on the part of Edward Jones. It began in 2014 when Emilio Lira decided to raise the issue of onboarding of financial advisors, especially to the most lucrative offices. He brought to light the fact that Edward Jones' system of replacing financial advisors who died or retired left out nonwhites from being considered. ROA.1055. Further evidence of discrimination by Edward Jones is set out in ROA.1055-1056. That this evidence comes from Emilio Lira does not make it unworthy of consideration. A jury hearing it would be free to give it its proper weight and the court is not free to summarily dismiss it.

Emilio Lira has been fighting Edward Jones since 2014 on this issue and it continued until his case was dismissed in March of 2019, primarily because he filed his complaint with EEOC untimely ROA.418. By the time the Court considered Defendant's motion for summary judgment, he had to endure the effects of having

his prior attorney withdraw leaving him to handle the case pro se. As a result, little discovery of any value had been conducted which led the Court to rule that the evidence did not raise a genuine issue of material fact and therefore granted the motion and dismissing his case. ROA.426-427, 434. The complaints went on for five years before it was dismissed during which time Plaintiff continued to voice his concerns about Mexican American Financial Advisors being left out of the onboarding process relative to the more lucrative offices. ROA.1056-1058. That Edward Jones did not fire him during the pendency of the lawsuit is easy to understand and explain. A jury could believe Edward Jones did not want to face a retaliation claim while the case was pending. Of particular importance is the fact that the Court never ruled that Edward Jones was not engaging in unlawful discrimination with respect to its onboarding process of financial advisors. Even after his case was dismissed, Emilio Lira continued to voice his concerns, hence the emails of March, April and May of 2019. ROA 1211-1231. A jury could very well conclude that if Plaintiff was continuing to complain of discrimination by Edward Jones, this could be motivation for Edward Jones to fire him. Add to this the fact that Edward Jones tacitly admitted racism existed within its company and such a finding is more probable even if Edward Jones claims in its brief that such a conclusion cannot be reached by the announcement of "a plan for combating racism and opportunities of color" DefBr.-32. It is quite naïve of Defendant to claim that

the implementation of such a plan does not mean there is racism within the company. Why else would you implement such a plan? You cannot agree to fight racism that does not exist within the company in the first place. The fact that they announced the plan in June of 2020 only means that it took them until then to acknowledge the racism and it had been existing for some time prior to that time. It therefore makes perfect sense for a jury to believe that there is a strong connection between Plaintiff's longstanding complaints of discrimination and his termination by Edward Jones. For Edward Jones to argue that technically there is a two-month gap between "his last protected activity" and his termination is to attempt to undermine the goal of Title VII as expressed in *McVille,* Id.

Edward Jones makes a big point of emphasizing the Texas Workforce Commission findings. DefBr.-13-15. However, Edward Jones overlooks the fact that the Texas Labor Code §213.007 expressly states that, *"A finding of fact, conclusion of law, judgment, or final order made under this subtitle is not binding and may not be used as evidence in an action or proceeding, other than an action or proceeding brought under this title, even of the action or proceeding is between the same or related parties or involves the same facts."* As such, such findings and conclusions can be given now eight in this cause. Likewise, with the EEOC "determination" made by an officer at the initial interview. An EEOC determination is not a legal determination but an administrative conclusion which is not binding on the court.

Edward Jones relies heavily on the contention that because Steve Rarick did not know that Plaintiff opposed the Defendant's Motion for Summary Judgment, he cannot be clothed with any retaliatory intent. This also demonstrates Defendant's efforts to obfuscate the big picture. Edward Jones admits that Steve Rarick was aware of the discrimination complaints and the lawsuit. That is, he was aware of who Emilio Lira was and the noise he was making against Edward Jones. He was also aware the first lawsuit was dismissed ROA.1095:9-13. These facts alone cold lead a jury to see that having that knowledge could lead a person in Steve Rarick's position to view Emilio Lira and consider him undesirable and unwelcome in the company, i.e., someone to get rid of. Not knowing that Emilio Lira opposed the motion for summary judgment takes nothing away from his knowledge of the person and the complaints he was expressing. He saw the email upon which he based his decision to terminate Emilio Lira, ROA.1102:so he clearly saw that Emilio Lira was still voicing his complaints about Edward Jones' process of onboarding the financial advisors ROA.1092:4-9. That the email was not expressly mentioned in Plaintiff's Amended Complaint does not change the fact that it contained complaints of discrimination which were identical to the ones raised in the lawsuit, ROA.1102:21-1103:24, 1124:17-24, which means Emilio Lira gave Steve Rarick every reason to believe that, unless he was eliminated, he would not cease his complaints until

Edward Jones made a wholesale change of it onboarding process. At that time, Steve Rarick was not aware that Edward Jones would, in June of 2020, make such change.

Edward Jones next argues that it should not be second guessed in its application of its policies when it deemed Plaintiff's use of the phrase, "white supremacists" as "unprofessional conduct" as this is the reason for the termination. The first problem with this position is that Edward Jones did not have a policy which defined "unprofessional conduct", ROA.1150:1-3, so it is not like Edward Jones was relying on a company-wide definition of the phrase which would have put employees on notice of what constituted such conduct. The second issue is that the use of the phrase "white supremacist" has to be placed in the proper context. For this, the testimony of Steve Rarick set forth in ROA 1104:24-1106:10, is helpful. Mr. Rarick acknowledged that the sentence in which the phrase was used did not identify any particular person whom Emilio Lira believed to be a white supremacist. In fact, he included himself in the reference by using the word, "we". Mr. Rarick also acknowledge that the phrase is "certainly an unflattering term directed towards white people who have a belief in the furthering of the white race and the exclusion of the nonwhite race". He further agreed that the phrase refers to "a person who believes that the white race is inherently superior to nonwhites". Mr. Rarick then agreed that in order for him to make a conclusion that the use of the phrase constituted unprofessional conduct, he would have to know the definition of "unprofessional

conduct". ROA1108:17-21. However, he acknowledged that "there's not a definition of unprofessional conduct" in Edward Jones' antidiscrimination policy. ROA.1109:3-6. Without a specific definition of unprofessional conduct within the written policies of Edward Jones, determining if the phrase constituted unprofessional conduct would involve the subjective interpretation of someone at Edward Jones. ROA.1109:14-19. In fact, Mr. Rarick testified that the phrase "unprofessional conduct" came from Phil Toben, ROA.1198:21-1199:10.

The above leads to the question, does the use of the phrase, "white supremacist" in the context in which it was used by Emilio Lira in his email constitute "unprofessional conduct"? The answer can only come after an examination of the whole picture.

To borrow a line from William Shakespeare in Hamlet, "methinks thou protest too much", one can say it is quite applicable to our situation. When the matter is seen from the eyes of Emilio Lira over the 14 years he was employed by Edward Jones, one can see that calling the use of the phrase "unprofessional conduct" is an over reaction by an entity cast with a sense of entitlement and maybe even a hint of guilt. Emilio Lira saw many white financial advisors get assigned to the plum offices without any advance notice or advertisement of the openings by Edward Jones. Since the openings were filled with family and friends of the departing advisors who were all white, it is the white advisors who were getting the plum assignments. A person

from the outside looking at these constant scenarios, like a jury, would likely see the white world within Edward Jones as acting as if they were superior to the nonwhite advisors since the nonwhite advisors were being excluded from the better offices. Is this not what white supremacy is in reality? Why then would Edward Jones call the classifying of such behavior by Emilio Lira as "acting like a white supremacist" unprofessional conduct when being called out by him? It is perhaps because it is part of the trend by a certain segment of the white population who would rather deflect criticism of its conduct than confront and accept the truth of it and take steps to remedy the wrongs. It is akin to calling the teaching of the harsh but true history of the atrocities committed by white America against nonwhites as unacceptable critical race theory and therefore should not be taught to our children. It is akin to the husband, who has just been accused by his wife of being an abuser, by claiming she is mentally unstable. It is easier to deflect the criticism and punish the complainer than to sit down with him and attempt to resolve the conflict.

Here, when Emilio Lira yet again complained of discrimination by Edward Jones, the company treated such criticism as "unprofessional conduct" just because the terms, "white supremacist" were used. It is human nature to dislike being referred to something generally considered unacceptable but when the reference is applicable in the reality of the situation, does it really rise to the level of "unprofessional conduct" and justify an employee's termination? This question is one which should

have been left to the jury to answer, and the decision of the trial court to deprive a jury form the opportunity to answer it was improper and therefore, reversible error.

### PRAYER

WHEREFORE, Emilio Lira, Appellant, prays that this Honorable Court reverse the decision of the trial court and order that this case be remanded to trial before a jury.


Respectfully submitted,

*[signature]*

Humberto G. Garcia
HUMBERTO G. GARCIA, PLLC
6243 IH 10 West, Suite 955
210-225-0909
hgarlaw@outlook.com

Attorney for Appellant Emilio Lira

## CERTIFICATE OF SERVICE

I certify that on September 14, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

    James F. Barrett
    Michelle Nasser
    DOWD BENNETT, LLP
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    314-889-7300 Telephone
    314-863-2111 Facsimile


_____
Humberto G. Garcia

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT
## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-50141
**Short Case Caption:** Emilio Lira v. Edward Jones

The foregoing document complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared used a proportionally-spaced typeface and includes 2,140 words and 13 pages long.

Date: September 14, 2022          Signature: /s/ Humberto G. Garcia
                                  Name: Humberto G. Garcia